# Exhibit A

Electronically FILED by Superior Court of California, County of San Mateo ON 5/11/2020 By /s/ Mia Marlowe Deputy Clerk

**Brian M. Heit, Esq., SBN 302474**
**HEIT LAW GROUP, P.C.**
340 South Lemon Avenue, Suite 8933
Walnut, CA 91789
Telephone (310) 744-5227
Facsimile (850) 254-1950
*Attorney for Plaintiff,*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN THE COUNTY OF SAN MATEO

| | |
|---|---|
| COQUESE HOLDEN, an individual,<br><br>     Plaintiff,<br><br>vs.<br><br>FLUENT, INC.; a Delaware corporation doing business in California, and, DOES 1-50, inclusive,<br><br>     Defendants. | Case Number:   20-CIV-02035<br><br>(UNLIMITED CIVIL ACTION)<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code §17529.5)**<br>2. **FRAUD – INTENTIONAL MISREPRESENTATION**<br>3. **FRAUD – NEGLIGENT MISREPRESENATION** |

COME NOW PLAINTIFF COQUESE HOLDEN (hereinafter referred to as "Plaintiff") and file this Complaint for one cause of action against FLUENT, INC. (hereinafter referred to as "Defendant" and/or "FLUENT") and allege as follows:

### I.     INTRODUCTION AND SUMMARY OF THE COMPLAINT

1. Plaintiff bring this Action against professional spammer FLUENT for advertising in and sending at least forty-one (41) unlawful spam e-mails to Plaintiff.

1

**FIRST COMPLAINT FOR DAMAGES**

2. Plaintiff did not give direct consent to, nor have a preexisting or current business relationship with FLUENT.

3. FLUENT'S sends unsolicited spam emails to individuals baiting them with free offerings in exchange for inputting personal information about themselves and then sells that personal information to other parties for significant sums of money.

4. Disturbingly, FLUENT never provides the free offering but continues to obtain more or more information until the consumer gives up on their pursuit of the free offering.

5. FLUENT's business model is scam and defrauds individuals out of their personal information in exchange for nothing.

6. Each spam e-mail FLUENT sent violated California Business & Professions Code §17529.5 ("Section 17529.5") due to material falsity and deception: the inclusion of third parties' domain names without permission by the third parties, and/or misrepresented or falsified information contained in or accompanying the e-mail headers (including the From Name, Sender E-mail Address, and Subject Line). Further, many, if not all, of the spam e-mails at issue were sent from untraceable domain names.

7. FLUENT is strictly liable for advertising in spam e-mails sent by its third-party affiliates.

8. Spam e-mail recipients are not required to allege or prove reliance or actual damages to have standing. (*See* Bus. & Prof. Code §17529.5(b)(1)(A)(iii)). Nevertheless, Plaintiff did suffer damages by receiving the spam e-mails. (*See*, e.g., Bus. & Prof. Code §17529(d), (e), (g), (h)). However, Plaintiff elect to recovery statutory damages only and forego recovery of any actual damages. (*See* Bus. & Prof. Code §17529.5(b)(1)(B)).

9. This Court should award liquidated damages of $1,000.00 per unlawful spam e-mail as provided by Section 17529.5(b)(1)(B)(ii) and not consider any reduction in damages because FLUENT failed to implement reasonably effective systems designed to prevent the sending of unlawful spam e-mail in violation of the statute. The unlawful elements of these spam e-mails represent willful acts of falsity and deception rather than mere clerical errors.

**FIRST COMPLAINT FOR DAMAGES**

10. This Court should award Plaintiff their attorney's fees pursuant to Section 17529.5(b)(1)(C). (*See also*, Code of Civil Procedure §1021.5, providing for attorney's fees when private parties bear the costs of litigation that confers a benefit on a large class of persons; here, by reducing the amount of unlawful spam e-mails received by California residents.).

## II.   PARTIES

### A.   Plaintiff

11. COQUESE HOLDEN, ("HOLDEN") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to HOLDEN's e-mail address she ordinarily accesses from California.

### B.   Defendant

12. Plaintiff is informed and believes and thereon allege that Defendant FLUENT, INC. a business entity ("FLUENT") and is now, and was at all relevant times, a Delaware corporation with a primary place of business in New York, New York doing business and soliciting California residents using unlawful email practices.

13. Plaintiff do not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 50, inclusive, and therefore sues said Defendants under the fictitious name of "DOE." Plaintiff is informed and believes and thereon allege that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this complaint and is legally responsible in some manner for causing the injuries and damages of which Plaintiff complain. Plaintiff is informed and believes and thereon allege that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this complaint, acting in conjunction with the named Defendant, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator. When the identities of DOE Defendants 1 through 50 are discovered, or otherwise made available, Plaintiff will seek to amend this Complaint to allege their identity and involvement with particularity.

## III.   JURISDICTION AND VENUE

### A.   Jurisdiction is Proper in a California Superior Court

3

FIRST COMPLAINT FOR DAMAGES

14. This California Superior Court has jurisdiction over the Action because a) Plaintiff are domiciled in and are citizens of the State of California; b) Plaintiff received the unlawful spams at their California email addresses; c) the amount in controversy is more than $25,000.00; and d) the Defendant is doing business in California.

B. **Venue is Proper in the County of San Mateo**

15. Venue is proper in the County of San Mateo (or indeed, any county in California of Plaintiff choosing) because FLUENT is a foreign corporation that has not designated the location and address of a principal office in California or registered to do business in California with the California Secretary of State. *See Easton v. Superior Court of San Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246 (4th Dist. 1970).

### IV.   AT LEAST 41 UNLAWFUL SPAM E-MAILS

16. Plaintiff alleges Defendant engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction." See Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 18, 2019).

17. California's False Advertising Law, Business & Professions Code § 17500 prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.(Chapman v. Skype Inc., 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted)).

A. **The Emails at Issue are "Spams"; Recipients and Counts**

18. "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." (Bus. & Prof. Code § 17529.1(c)). The emails at issue are "commercial email advertisements" because they were initiated for the purpose of advertising and promoting the sale of FLUENT's products and services.

19. The emails are "unsolicited commercial email advertisements" because no Plaintiff gave "direct consent" to or had a "preexisting or current business relationship" with Defendant.

4

**FIRST COMPLAINT FOR DAMAGES**

Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (l), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." (Bus. & Prof. Code § 17529.1(o)). Direct consent means that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." (Bus. & Prof. Code § 17529.1(d) (emphasis added)). 'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisements, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. (Bus. & Prof. Code § 17529.1(l)).

20. FLUENT advertised in, sent, and/or conspired to send at least forty-one (41) unlawful spams that Plaintiff received at their "California email addresses" within one year prior to the filing of this Action, as shown below. 'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state." (Bus. & Prof. Code § 17529.1(b)).

| PLAINTIFF | SPAM E-MAILS RECEIVED |
|---|---|
| HOLDEN | 41 |

21. Plaintiff's e-mail addresses play no part in determining whether or not the e-mails have falsified, misrepresented, forged, misleading, or otherwise deceptive information contained in or accompanying the e-mail headers.

22. The spams are all unlawful because they are materially false and deceptive, by inclusion of third parties' domain names without permission by the third parties, and/or materially falsified/misrepresented information in the email headers, as described in more detail below.

**B. Spams With False and Misrepresented Text in From Names Violate Business & Professions Code § 17529.5(a)(2)**

23. Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

24. The From Name field is part of email headers. The From Name does not include the Sender E-mail Address.

25. Plaintiff do not insist on any particular label in the From Name field. Rather, Plaintiff contend that the text, whatever it is, cannot misrepresent who the e-mails are from.

26. The From Name is important to an e-mail user, because in almost all e-mail programs, the inbox view only displays a list of e-mails, showing the From Name, Subject Line, and Send Date. Therefore, even if the body of the e-mail identifies the advertiser, the recipient will not know that until s/he has already clicked to open the e-mail.

27. Indeed, empirical evidence has demonstrated that the From Name is the most important factor email recipients use to determine whether or not an email is spam. Thus, a From Name that misrepresents who a spam is from is not a mere technical error; rather, it is a material misrepresentation of the most important part of the email header.

28. Although Plaintiff do not sue under the federal CAN-SPAM Act, Plaintiff note that the Federal Trade Commission has also identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated:

> "Don't use false or misleading header information. Your "From," "To," "Reply-To," and routing information – including the originating domain name and email address – *must be accurate and identify the person or business who initiated the message*."

29. Federal Trade Commission, CAN-SPAM ACT: A COMPLIANCE GUIDE FOR BUSINESS, available at http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business (emphasis added).

6

**FIRST COMPLAINT FOR DAMAGES**

30. Most of the spams that Plaintiff received advertising FLUENT's websites show purported names in the From Name field, e.g., "Fargo Rewards," "Wells-Fargo-Survey," "US-Bank-Visa Card Rewards!," "Amazon Reward Zone," and "Scott Peru."

31. Plaintiff is informed and believes and thereon allege that FLUENT sent them the spams with the aforementioned From Names. Such From Names are false or, at minimum misleading, as they represent that the spams are from Wells Fargo, US Bank, Amazon or an individual named Scott Peru, as oppose to FLUENT.

32. Plaintiff is informed and believes and thereon allege that FLUENT may have not registered these generic phrases as fictitious business names ("FBNs") in any county nor are these registered trademarks of FLUENT. Regardless, these generic phrases – even if they are registered FBNs – do not identify FLUENT a misrepresent that the spams are from various banks, other companies or a specific individual.

33. Plaintiff is informed and believes and thereon allege that FLUENT knowingly chooses to use the abovementioned From Names precisely so the recipients would not know who the emails were really from when viewing the spams in the inbox view. This forces recipients to open the emails to see if the emails might actually be from a their bank, or someone to whom recipients gave direct consent to send them commercial email advertisements… or if the emails are in fact, as is the case here, nothing but spams from FLUENT.

34. Moreover, some of the spams did not identify FLUENT – the advertiser – in the body of the spams. Nor did the spams accurately identify FLUENT's affiliates – the actual senders – in the body of the spams.

**C. Spams With False and Misrepresented Subject Lines Violate Business & Professions Code § 17529.5(a)(2)**

35. Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in e-mail headers.

36. The Subject Line is part of email headers.

37. Most of the spams that Plaintiff received contain Subject Lines with falsified and/or misrepresented information. Plaintiff allege that these Subject Lines are absolutely false and/or

7

**FIRST COMPLAINT FOR DAMAGES**

misrepresented and violate Section 17529.5(a)(2), as opposed to misleading relative to the contents/body of the spams, which would be a violation of Section 17529.5(a)(3). To name but a few examples:

38. Plaintiff received spams advertising FLUENT's GET ISNTAHARD products with the Subject Lines. These Subject Lines contain false and misrepresented information. Plaintiff received numerous spams with this specific subject line. However, due to the volume of spams with this same subject line, Plaintiff believe that neither FLUENT nor its affiliates knew whether the Plaintiff are suffering from erectile dysfunction or some other erectile ailment. This further demonstrates that PLAINITFFS never gave FLUENT direct consent to send them commercial email advertisements.

39. In sum, FLUENT knowingly uses inflammatory, false, and misrepresented Subject Lines referencing mortgage refinancing in order to have recipients open the emails and sign up for its products and services, even though FLUENT has no particular knowledge if the Plaintiff are in medical need of their product. FLUENT's spamming is false and deliberately formulaic, without regards whatsoever for the truth of any of the Plaintiff' needs or desires.

**D. Spams Using Third Party Domain Names Without the Consent of the Third Party Violate Business & Professions Code § 17529.5(a)(1)**

**E. FLUENT is Strictly Liable for Spams Sent By its Affiliates**

40. Plaintiff is informed and believes and thereon allege that FLUENT contracted with third party advertising networks and affiliates to advertise its websites for the purpose of selling products and services for a profit.

41. Plaintiff is informed and believes and thereon allege that no one forced FLUENT to outsource any of its advertising to third party spammers.

42. Advertisers such as FLUENT are liable for advertising in spams, even if third parties hit the Send button.

> "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore.

8

FIRST COMPLAINT FOR DAMAGES

The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements."
Bus. & Prof. Code § 17529(j)(k).

"It is unlawful [ ] to advertise in a commercial email advertisement [ ] under any of the following circumstances…"
Bus. & Prof. Code § 17529.5 (emphasis added).

Of course, the affiliates are also liable for sending unlawful spams. See *Balsam*, generally.

43. In *Hypertouch Inc. v. ValueClick Inc.* et al, the court of appeal held that advertisers are strictly liable for advertising in false and deceptive spams, even if the spams were sent by third parties.

> [S]ection 17529.5 makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in subdivisions (a)(1)-(3). Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.
>
> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity strictly liable for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) regardless of whether the entity knew that such e-mails had been sent or had any intent to deceive the recipient.

192 Cal. App. 4th 805, 820-21 (2d Dist. 2011). The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute. *Id.* at 829.

E. **Plaintiff Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual Damages is Necessary**

44. The California Legislature defined liquidated damages to be $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

45. Plaintiff is informed and believes and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

46.     Plaintiff' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

47.     Section 17529.5 does not require Plaintiff to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams.  Recipients of unlawful spam have standing to sue and recover liquidated damages. (Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828).

48.     However, Plaintiff did suffer damages by receiving the unlawful spams advertising FLUENT's products and services in the state of California, at their California email addresses. (Bus. & Prof. Code § 17529(d), (e), (g), (h)).  Regardless, Plaintiff do not seek actual damages in this Action, only liquidated damages. (Bus. & Prof. Code § 17529.5(b)(1)(B)).

**G. Defendant's Actions Were Willful and Preclude any Reduction in Statutory Damages**

49.     Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam. (Bus. & Prof. Code § 17529.5(b)(2)).  But, to secure the reduction, Defendant has the burden of proof to demonstrate not only that they have practices and procedures to prevent unlawful spamming, but also that those practices and procedures are effective.

50.     Plaintiff is informed and believes and thereon allege that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

51.     Even if Defendant had any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

52.     Even if Defendant reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

53.     Moreover, Plaintiff is informed and believes and thereon allege that Defendant intended to deceive recipients of their spam messages through the use of falsified and/or misrepresented information in From Names and Subject Lines, and the use of third parties' domain names without permission by the third parties, as described herein.

54. Subject Lines and From Names do not write themselves and domain names do not register themselves; the false and misrepresented information contained in and accompanying the email headers are not "clerical errors." Plaintiff is informed and believes and thereon allege that Defendant went to great lengths to create falsified and misrepresented information contained in and accompanying the email headers in order to deceive recipients, Internet Service Providers, and spam filters.

55. Plaintiff is informed and believes and thereon allege that Defendant intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

56. Punitive damages are appropriate to punish malicious, oppressive, and/or fraudulent conduct by Defendant, and to deter others from engaging in such conduct.

## V.     FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5]**

**(Against All Defendants)**

57. Plaintiff hereby incorporate the foregoing paragraphs as though set forth in full herein.

58. Plaintiff received the spams at issue within one year prior to filing this Complaint.

59. Defendant advertised in, sent, and/or caused to be sent at least forty-one (41) materially false and deceptive unsolicited commercial email advertisements to Plaintiff' California electronic mail addresses. The spams contain third parties' domain names without permission by the third parties, and/or contain or accompanied by falsified and/or misrepresented information in the email headers, in violation of Section 17529.5.

60. The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per email.

61. Plaintiff seek reimbursement of attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

62. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this

11

**FIRST COMPLAINT FOR DAMAGES**

action, Plaintiff expect to enforce an important right affecting the public interest and thereby confers a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

63. WHEREFORE, Plaintiff pray for judgment against Defendant as hereinafter set forth.

## SECOND CAUSE OF ACTION

### [FRAUD – INTENTIONAL MISREPRESENTATION]

**(Against All Defendants)**

64. Defendant represented that Plaintiff would receive free rewards if Plaintiff entered personal information.

65. Defendant's representation that Plaintiff would receive free rewards in exchange for Plaintiff's personal information was false.

66. Defendant knew that the representation that Plaintiff would receive free rewards if Plaintiff entered personal information was false when it made it.

67. Defendant intended that Plaintiff would rely on the free rewards if Plaintiff entered personal information.

68. The Plaintiff reasonably relied on Defendant's representations.

69. The Plaintiff was harmed because it has provided Defendant with personal information that has been sold to other parties.

70. The Plaintiff's reliance on Defendant's representation was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

### [FRAUD – NEGLIGENT MISREPRESENTATION]

**(Against All Defendants)**

71. Defendant represented that Plaintiff would receive free rewards if Plaintiff entered personal information.

72. Defendant's representation that Plaintiff would receive free rewards in exchange for Plaintiff's personal information was false.

73. Defendant may have honestly believe that the representation was true, Defendant had no reasonable ground for believing the representation was true when it made it.

74. Defendant intended that Plaintiff would rely on the free rewards if Plaintiff entered personal information.

75. The Plaintiff reasonably relied on Defendant's representations.

76. The Plaintiff was harmed because it has provided Defendant with personal information that has been sold to other parties.

77. The Plaintiff's reliance on Defendant's representation was a substantial factor in causing Plaintiff's harm.

## PRAYER FOR RELIEF

### (Against Defendant)

A. An Order from this Court declaring that Defendant violated California Business & Professions Code § 17529.5 by advertising in and sending unlawful spams.

B. Liquidated damages against Defendants in the amount of $1,000 for each of at least 83 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $41,000.00, as set forth below:

C. Attorneys' fees as authorized by Section 17529.5(b)(1)(C) and Code of Civil Procedure §1021.5 for violations of Section 17529.5.

D. Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

E. Punitive damages, in an amount to be determined by this Court.

F. Costs of suit.

G. Such other and further relief as the Court deems proper.

Dated: May 11, 2020

By: *Brian M. Heit*
Brian M. Heit, Esq.
HEIT LAW GROUP, P.C.
*Attorneys for Plaintiff*

13

**FIRST COMPLAINT FOR DAMAGES**