1
2
3
4
5

**Brian M. Heit, Esq., SBN 302474**
**HEIT LAW GROUP, P.C.**
340 South Lemon Avenue, Suite 8933
Walnut, CA 91789
Telephone (310) 744-5227
Facsimile (850) 254-1950
Brian@Heitlawgroup.com
*Attorney for Plaintiffs*

6
7

### UNITED STATES DISTRIC COURT
### NORTHERN DISTRICT OF CALIFORNIA

8
9
10
11
12
13
14
15
16
17
18
19
20
21

COQUESE HOLDEN, an individual,
KRISTY FONTES, an individual;
STEPHANIE HELLER, an individual;
LASHANA GRANT, an individual;
BRYAN HILLIARD, an individual;
STEVEN HOFFER, an individual;
DIEDRE LOVE, an individual;
ANGELA JOHNSON, an individual;
NOAH MEINER, an individual;
NACE REYNOLDS, an individual;
JUANITA WILLIAMS, an individual,

                  Plaintiff,

vs.

FLUENT, INC.; a Delaware corporation doing
business in California; and FLUENT, LLC, a
Delaware Limited-liability company;
and, DOES 1-50, inclusive,
                  Defendant

Case No.: 3:20-cv-03816-JCS

**FIRST AMENDED COMPLAINT -**
**1.    VIOLATIONS OF CALIFORNIA**
**RESTRICTIONS ON UNSOLICITED**
**COMMERCIAL E-MAIL (Cal. Bus. &**
**Prof. Code §17529.5)**
**2.    FRAUD – INTENTIONAL**
**MISREPRESENTATION**
**3.    FRAUD – NEGLIGENT**
**MISREPRESENATION**

Original Filing Date: 5/11/2020

Trial Date: None Selected

22
23
24
25
26
27
28

      COME NOW PLAINTIFFS COQUESE HOLDEN, KRISTY FONTES, STEPHANIE

HELLER, LASHANA GRANT, BRYAN HILLIARD, DIEDRE LOVE, ANGELA JOHNSON,

NOAH MEINER, NACE REYNOLDS, JUANITA WILLIAMS (hereinafter referred to as

"Plaintiffs") and file this Complaint for one cause of action against FLUENT, INC and FLUENT,

LLC. (hereinafter referred to as "Defendant" and/or "FLUENT") and allege as follows:

## I.   **INTRODUCTION AND SUMMARY OF THE COMPLAINT**

1.   Plaintiffs bring this Action against professional spammer FLUENT for advertising in and sending at least one thousand and three hundred (1,300) unlawful spam e-mails to Plaintiffs.

2.   Plaintiffs did not give direct consent to, nor have a preexisting or current business relationship with FLUENT.

3.   FLUENT'S sends unsolicited spam emails to individuals baiting them with free offerings in exchange for inputting personal information about themselves and then sells that personal information to other parties for significant sums of money.

4.   Disturbingly, FLUENT never provides the free offering but continues to obtain more or more information until the consumer gives up on their pursuit of the free offering.

5.   FLUENT's business model is scam and defrauds individuals out of their personal information in exchange for nothing.

6.   Each spam e-mail FLUENT sent violated California Business & Professions Code §17529.5 ("Section 17529.5") due to material falsity and deception: the inclusion of third parties' domain names without permission by the third parties, and/or misrepresented or falsified information contained in or accompanying the e-mail headers (including the From Name, Sender E-mail Address, and Subject Line). Further, many, if not all, of the spam e-mails at issue were sent from untraceable domain names.

7.   FLUENT argues the case at hand to be similar to *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334 (2010). *Kleffman*'s holding dealt with Plaintiffs claim that sending unsolicited email advertisements from generic from names in order to deceive spam filtering software was insufficient to bring their claim. The court in *Kleffman* found that there was no violation of section 17529.5(a)(2) of the California Business and Professions Code because Defendant sent emails with registered domain names which did not mislead. *Id.* at 343. Further the court in *Kleffman* did not find that subject lines constituted email headers because of the existence of section (a)(3). The issue with the case at hand is different, in that Fluent sends unsolicited commercial email advertisements which misrepresent the facts stated in the emails. There are

no rewards to be earned, only personal information deceptively being taken. Even if Subject Lines or Email Headers are not found to be misrepresenting

8.    FLUENT is strictly liable for advertising in spam e-mails sent by its third-party affiliates.

9.    Spam e-mail recipients are not required to allege or prove reliance or actual damages to have standing. (*See* Bus. & Prof. Code §17529.5(b)(1)(A)(iii)). Nevertheless, Plaintiffs did suffer damages by receiving the spam e-mails. (*See*, e.g., Bus. & Prof. Code §17529(d), (e), (g), (h)). However, Plaintiffs elect to recovery statutory damages only and forego recovery of any actual damages. (*See* Bus. & Prof. Code §17529.5(b)(1)(B)).

10.    This Court should award liquidated damages of $1,000.00 per unlawful spam e-mail as provided by Section 17529.5(b)(1)(B)(ii) and not consider any reduction in damages because FLUENT failed to implement reasonably effective systems designed to prevent the sending of unlawful spam e-mail in violation of the statute. The unlawful elements of these spam e-mails represent willful acts of falsity and deception rather than mere clerical errors.

11.    This Court should award Plaintiffs their attorney's fees pursuant to Section 17529.5(b)(1)(C). (*See also*, Code of Civil Procedure §1021.5, providing for attorney's fees when private parties bear the costs of litigation that confers a benefit on a large class of persons; here, by reducing the amount of unlawful spam e-mails received by California residents.).

## II.    PARTIES

### A.  Plaintiff

12.    COQUESE HOLDEN, ("HOLDEN") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to HOLDEN's e-mail address she ordinarily accesses from California.

13.    KRISTY FONTES, ("FONTES") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to FONTES' e-mail address she ordinarily accesses from California.

14.    STEPHANIE HELLER, ("HELLER") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to HELLER's e-mail address she ordinarily accesses from California.

15. LASHANA GRANT, ("GRANT") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to GRANT's e-mail address she ordinarily accesses from California.

16. BRYAN HILLIARD, ("HILLIARD") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to HILLIARD's e-mail address she ordinarily accesses from California.

17. STEVEN HOFFER, ("HOFFER") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to HOFFER's e-mail address she ordinarily accesses from California.

18. DIEDRE LOVE, ("LOVE") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to LOVE's e-mail address she ordinarily accesses from California.

19. ANGELE JOHNSON, ("JOHNSON") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to JOHNSON's e-mail address she ordinarily accesses from California.

20. NOAH MEINER, ("MEINER") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to MEINER's e-mail address she ordinarily accesses from California.

21. NACE REYNOLDS, ("REYNOLDS") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to REYNOLDS' e-mail address she ordinarily accesses from California.

22. JUANITA WILLIAMS, ("WILLIAMS") was domiciled in and was a citizen of the State of California when she received the spams at issue. The spams at issue were sent to WILLIAMS' e-mail address she ordinarily accesses from California.

**B. Defendant**

23. Plaintiff is informed and believes and thereon allege that Defendant FLUENT, INC. a business entity ("FLUENT") and is now, and was at all relevant times, a Delaware corporation

with a primary place of business in New York, New York doing business and soliciting California residents using unlawful email practices.

24.    Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 50, inclusive, and therefore sues said Defendants under the fictitious name of "DOE." Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this complaint and is legally responsible in some manner for causing the injuries and damages of which Plaintiffs complaint. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this complaint, acting in conjunction with the named Defendant, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator. When the identities of DOE Defendants 1 through 50 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege their identity and involvement with particularity.

## III.    JURISDICTION AND VENUE

### A.    Jurisdiction is Proper in a United States District Court for The Northern District of California

25.    The United State District Court for the Northern District of California has jurisdiction over the Action because a) Plaintiffs are domiciled in and are citizens of the State of California; b) Plaintiff received the unlawful spams at their California email addresses; c) the amount in controversy is more than $75,000.00; and d) the Defendant is a Delaware corporation registered to do business in the State of California

### B. Venue is Proper in the Northern District of California

26.    Venue is proper in the Northern District of California because FLUENT sent unsolicited commercial email advertisement to residents of the Northern District pursuant to section 1391(b)(2) of the Federal Rules of Civil Procedure the federal district where the events are substantially related.

## IV.    AT LEAST 1,300 UNLAWFUL SPAM E-MAILS

27.    Plaintiffs allege Defendant engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction." See Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 18, 2019).

28.    California's False Advertising Law, Business & Professions Code § 17500 prohibits "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . .

[T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false. (Chapman v. Skype Inc., 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted)).

**A. The Emails at Issue are "Spams"; Recipients and Counts**

29.    "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  (Bus. & Prof. Code § 17529.1(c)). The emails at issue are "commercial email advertisements" because they were initiated for the purpose of advertising and promoting the sale of FLUENT's products and services.

30.    The emails are "unsolicited commercial email advertisements" because no Plaintiffs gave "direct consent" to or had a "preexisting or current business relationship" with Defendant. Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (l), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  (Bus. & Prof. Code § 17529.1(o)).  Direct consent means that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative."  (Bus. & Prof. Code § 17529.1(d) (emphasis added)). 'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisements, means that the recipient has made an

inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. (Bus. & Prof. Code § 17529.1(l)).

31.    FLUENT advertised in, sent, and/or conspired to send at least one thousand and three hundred (1,300) unlawful spams that Plaintiffs received at their "California email addresses" within one year prior to the filing of this Action, as shown below. 'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state."  (Bus. & Prof. Code § 17529.1(b)).

| PLAINTIFF | SPAM E-MAILS RECEIVED |
|-----------|----------------------|
| HOLDEN | 41 |
| FONTES | 393 |
| HELLER | 10 |
| GRANT | 5 |
| HILLIARD | 9 |
| HOFFER | 5 |
| LOVE | 503 |
| JOHNSON | 50 |
| MEINER | 192 |
| REYNOLDS | 45 |
| WILLIAMS | 46 |

32.    Plaintiff's e-mail addresses play no part in determining whether or not the e-mails have falsified, misrepresented, forged, misleading, or otherwise deceptive information contained in or accompanying the e-mail headers.

33.    The spams are all unlawful because they are materially false and deceptive, by inclusion of third parties' domain names without permission by the third parties, and/or materially falsified/misrepresented information in the email headers, as described in more detail below.

**B. Spams With False and Misrepresented Text in From Names Violate Business & Professions Code § 17529.5(a)(2)**

34.    Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

35.    The From Name field is part of email headers.  The From Name does not include the Sender E-mail Address.

36.    Plaintiffs do not insist on any particular label in the From Name field.  Rather, Plaintiffs contend that the text, whatever it is, cannot misrepresent who the e-mails are from.

37.    The From Name is important to an e-mail user, because in almost all e-mail programs, the inbox view only displays a list of e-mails, showing the From Name, Subject Line, and Send Date. Therefore, even if the body of the e-mail identifies the advertiser, the recipient will not know that until s/he has already clicked to open the e-mail.

38.    Indeed, empirical evidence has demonstrated that the From Name is the most important factor email recipients use to determine whether or not an email is spam. Thus, a From Name that misrepresents who a spam is from is not a mere technical error; rather, it is a material misrepresentation of the most important part of the email header.

39.    Although Plaintiffs do not sue under the federal CAN-SPAM Act, Plaintiffs note that the Federal Trade Commission has also identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated:

> "Don't use false or misleading header information. Your "From," "To," "Reply-To," and routing information – including the originating domain name and email address – *must be accurate and identify the person or business who initiated the message*."

40.    Federal Trade Commission, CAN-SPAM ACT: A COMPLIANCE GUIDE FOR BUSINESS, available at http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business (emphasis added).

41. Most of the spams that Plaintiff received advertising FLUENT's websites show purported names in the From Name field, e.g., "Fargo Rewards," "Wells-Fargo-Survey," "US-Bank-Visa Card Rewards!," "Amazon Reward Zone," and "Scott Peru." See below.



42.    Plaintiffs are informed and believe and thereon allege that FLUENT sent them the spams with the aforementioned From Names. Such From Names are false or, at minimum misleading, as they represent that the spams are from Wells Fargo, US Bank, Amazon or an individual named Scott Peru, as oppose to FLUENT.

43.    Plaintiffs are informed and believe and thereon allege that FLUENT may have not registered these generic phrases as fictitious business names ("FBNs") in any county nor are these registered trademarks of FLUENT. Regardless, these generic phrases – even if they are registered FBNs – do not identify FLUENT a misrepresent that the spams are from various banks, other companies or a specific individual.

44.    Plaintiffs are informed and believe and thereon allege that FLUENT knowingly chooses to use the abovementioned From Names precisely so the recipients would not know who the emails were really from when viewing the spams in the inbox view.  This forces recipients to open the emails to see if the emails might actually be from their bank, or someone to whom recipients gave

direct consent to send them commercial email advertisements… or if the emails are in fact, as is the case here, nothing but spams from FLUENT.

45.     Moreover, some of the spams did not identify FLUENT – the advertiser – in the body of the spams.  Nor did the spams accurately identify FLUENT's affiliates – the actual senders – in the body of the spams.

**C. Spams With False and Misrepresented Email Headers Violate Business & Professions Code § 17529.5(a)(2)**

46.     Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in e-mail headers.

47.     Most of the spams that Plaintiff received contain email headers with falsified and/or misrepresented information.  Plaintiffs allege that these Subject lines are absolutely false and/or misrepresented and violate Section 17529.5(a)(2), as opposed to misleading relative to the contents/body of the spams, which would be a violation of Section 17529.5(a)(3).  To name but a few examples:

48.     Plaintiff received spams advertising FLUENT's GET ISNTAHARD products with the email header. These email headers contain false and misrepresented information. Plaintiffs received numerous spams with this specific subject line. However, due to the volume of spams with this same email headers, Plaintiffs believe that neither FLUENT nor its affiliates knew whether the Plaintiffs are suffering from erectile dysfunction or some other erectile ailment. This further demonstrates that PLAINITFFS never gave FLUENT direct consent to send them commercial email advertisements.

49.     Plaintiff further has received emails with falsified email headers which claim to contain gift cards from "Wells-Fargo." There are no agreements between Fluent and Well Fargo. Furthermore, it is highly unlikely Fluent or any agent of fluent have authority to give Spam Recipients one thousand dollars ($1,000). See below.

50.     In sum, FLUENT knowingly uses inflammatory, false, and misrepresented Subject Lines referencing mortgage refinancing in order to have recipients open the emails and sign up for its products and services, even though FLUENT has no particular knowledge if the Plaintiffs are in

1  medical need of their product.  FLUENT's spamming is false and deliberately formulaic, without

2  regards whatsoever for the truth of any of the Plaintiff' needs or desires.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

**Subject:** Wells Fargo Wants To Give You $1,000!
**From:** Scott Peru <info@sctiprsk.com>
**Date:** 10/4/2019, 11:41 AM
**To:** noahmeiner@yahoo.com


*Today's promotion courtesy of:*
**CONSUMER** ALERTS
Noah,

Wells Fargo is a very popular bank across the United States. They are famous
for offering current and new customers really generous bonuses. Currently,
they are offering $1,000 to people for all sorts of reasons. Please review details
by following the link below right now!

Resource Type: Income
Eligibility: Open


**Get Your $1,000 Now**


We look forward to assisting you in finding helpful information and resources
that you might be interested in.

Sincerely,
ConsumerAlerts Editor

You are receiving this message because you signed up to receive helpful
information and resources from Consumer-Alerts.net. If at anytime you no
longer wish to receive these messages, please click here to unsubscribe.

22  **D. Spams Using Third Party Domain Names Without the Consent of the Third Party**

23  **Violate Business & Professions Code § 17529.5(a)(1)**

24  51.    Plaintiff are informed and believe and thereon allege that FLUENT sent spam emails using

25  the Amazon, Costco, and US Bank domain names for the purposes of misleading Plaintiffs without

26  the consent of Amazon, Costco, or US Bank. See example above demonstrating third party domain

27  not being used for the permitted purpose of comparative advertisement. Instead Fluent use of third-

28  party domain names is intended to deceive spam recipients.

52.     Plaintiffs are informed and believe and thereon allege that FLUENT uses third party domain names in order to mislead receivers to share their information while believing the source to be from a domain that they have authorized to advertise to them.

**E. FLUENT is Strictly Liable for Spams Sent By its Affiliates**

53.     Plaintiffs are informed and believe and thereon allege that FLUENT contracted with third party advertising networks and affiliates to advertise its websites for the purpose of selling products and services for a profit.

54.     Plaintiffs are informed and believe and thereon allege that no one forced FLUENT to outsource any of its advertising to third party spammers.

55.     Advertisers such as FLUENT are liable for advertising in spams, even if third parties hit the Send button.

> "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore.
>
> The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements."
> Bus. & Prof. Code § 17529(j)(k).
>
> "It is unlawful [ ] to advertise in a commercial email advertisement [ ] under any of the following circumstances…"
> Bus. & Prof. Code § 17529.5 (emphasis added).
>
> Of course, the affiliates are also liable for sending unlawful spams.  See *Balsam*, generally.

56.     In *Hypertouch Inc. v. ValueClick Inc*. et al, the court of appeal held that advertisers are strictly liable for advertising in false and deceptive spams, even if the spams were sent by third parties.

> [S]ection 17529.5 makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in subdivisions (a)(1)-(3). Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.
>
> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity strictly liable for advertising in a

> commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) regardless of whether the entity knew that such e-mails had been sent or had any intent to deceive the recipient.

192 Cal. App. 4th 805, 820-21 (2d Dist. 2011).  The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute.  *Id*. at 829.

### E. **Plaintiff Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual Damages is Necessary**

57.     The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

58.     Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

59.     Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

60.     Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams.  Recipients of unlawful spam have standing to sue and recover liquidated damages.  (Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828).

61.     However, Plaintiffs did suffer damages by receiving the unlawful spams advertising FLUENT's products and services in the state of California, at their California email addresses.  (Bus. & Prof. Code § 17529(d), (e), (g), (h)).  Regardless, Plaintiff do not seek actual damages in this Action, only liquidated damages.  (Bus. & Prof. Code § 17529.5(b)(1)(B)).

### G. **Defendant's Actions Were Willful and Preclude any Reduction in Statutory Damages**

62.     Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam.  (Bus. & Prof. Code § 17529.5(b)(2)).  But, to secure the reduction, Defendant has the burden of

proof to demonstrate not only that they have practices and procedures to prevent unlawful spamming, but also that those practices and procedures are effective.

63.     Plaintiffs are informed and believe and thereon allege that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

64.     Even if Defendant had any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

65.     Even if Defendant reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

66.     Moreover, Plaintiffs are informed and believe and thereon allege that Defendant intended to deceive recipients of their spam messages through the use of falsified and/or misrepresented information in From Names and Subject Lines, and the use of third parties' domain names without permission by the third parties, as described herein.

67.     Subject Lines and From Names do not write themselves and domain names do not register themselves; the false and misrepresented information contained in and accompanying the email headers are not "clerical errors."   Plaintiffs are informed and believe and thereon allege that Defendant went to great lengths to create falsified and misrepresented information contained in and accompanying the email headers in order to deceive recipients, Internet Service Providers, and spam filters.

68.     Plaintiffs are informed and believe and thereon allege that Defendant intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

69.     Punitive damages are appropriate to punish malicious, oppressive, and/or fraudulent conduct by Defendant, and to deter others from engaging in such conduct.

**V**. **Fluent intentionally sends emails misrepresenting the rewards that Spam Recipients can win**

70.     Plaintiffs are informed and believe and thereon allege that Defendant intended to represent that Spam Recipients would receive free rewards in exchange for sharing personal information.

71.     Plaintiffs are informed and believe and thereon allege that Defendant's representation of free rewards in exchange for personal information was false. The surveys either lead down a rabbit hole of links which never actually give the Spam Recipient any free reward but instead evades with more surveys, or completely freeze computer. See Declaration below.

72.     Plaintiffs are informed and believe and thereon allege that Defendant knew the representation of free rewards was false when the representation was made.

73.     Plaintiffs are informed and believe and thereon allege that Defendant knew Spam Recipients would rely on the representation that completing surveys would result in free rewards. This is plainly demonstrated by the advertising method, many email recipients of free rewards are initially deceived into believing the contents of the email, especially when accompanied by third party domains such as Wells Fargo and others demonstrated above.

74.     Plaintiffs are informed and believe and thereon allege that Defendant intended for Spam recipients to rely on the representation that they would receive free rewards in exchange for filling out surveys requiring personal information. This is demonstrated by the business model of Defendants in overflowing email accounts with offers for free rewards in exchange for surveys.

75.     Plaintiffs are informed and believe and thereon allege that Plaintiffs reliance on representation through filling out surveys in order to receive free rewards caused them harm by having their personal information used for unsolicited commercial email purposes.

76.     Plaintiffs are informed and believe and thereon allege that without Defendants representation of free rewards accompanied with third party domains, Spam Recipients would not fill out surveys which are intended to collect personal information and use it in order to send more spam from other spam agencies.

77.     Plaintiffs are informed and believe and thereon allege that Defendant sends surveys while representing them as coming from third-party domains and offering free rewards, only to freeze computers once the surveys are finished or open new surveys which greatly reduce processing speeds of computers. The only party winning here is Fluent by gaining more and more personal information through their deceptive emails. See Declaration below.

**VI. <u>Fluent should have known the representation of rewards was false because they do give</u>**
**<u>rewards in exchange for the personal information they steal through deceptive emails.</u>**

78.     Plaintiffs are informed and believe and thereon allege that Defendant represented that Spam Recipients would receive free rewards in exchange for sharing personal information. This is blatantly clear in many of the example emails provided above.

79.     Plaintiffs are informed and believe and thereon allege that Defendant's representation of free rewards in exchange for Plaintiffs personal information was false. Demonstrated by the fact that no Plaintiff ever received any rewards nor would they any rewards. See Declaration below.

80.     Plaintiffs are informed and believe and thereon allege that Defendant had no reasonable ground to for believing the representation was true when it made it because Fluent works to spam. This is demonstrated by the volume of spam sent only to our Plaintiffs.

81.     Plaintiffs are informed and believe and thereon allege that Plaintiffs reasonably relied on the representations made by Fluent and received no rewards, merely more spam. Further, this reliance was a substantial factor of which caused Plaintiffs to share personal information likely is the reason for increased spams.

## V.      **FIRST CAUSE OF ACTION**

**[Violations of California Restrictions on Unsolicited Commercial Email, California**

**Business & Professions Code § 17529.5]**

**(Against All Defendants)**

82.     Plaintiff hereby incorporate the foregoing paragraphs as though set forth in full herein.

83.     Plaintiff received the spams at issue within one year prior to filing this Complaint.

84.     Defendant advertised in, sent, and/or caused to be sent at least one thousand and three hundred (1,300) materially false and deceptive unsolicited commercial email advertisements to Plaintiff' California electronic mail addresses.  The spams contain third parties' domain names without permission by the third parties, and/or contain or accompanied by falsified and/or misrepresented information in the email headers, in violation of Section 17529.5.

85.     The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per email.

86.    Plaintiff seek reimbursement of attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

87.    The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5.  By prosecuting this action, Plaintiff expect to enforce an important right affecting the public interest and thereby confers a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

88.    WHEREFORE, Plaintiff pray for judgment against Defendant as hereinafter set forth.

## SECOND CAUSE OF ACTION

## [FRAUD – INTENTIONAL MISREPRESENTATION]

### (Against All Defendants)

89.    Defendant represented that Plaintiff would receive free rewards if Plaintiff entered personal information.

90.    Defendant's representation that Plaintiff would receive free rewards in exchange for Plaintiff's personal information was false.

91.    Defendant knew that the representation that Plaintiff would receive free rewards if Plaintiff entered personal information was false when it made it.

92.    Defendant intended that Plaintiff would rely on the free rewards if Plaintiff entered personal information.

93.    The Plaintiff reasonably relied on Defendant's representations.

94.    The Plaintiff was harmed because it has provided Defendant with personal information that has been sold to other parties.

95.    The Plaintiff's reliance on Defendant's representation was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

## [FRAUD – NEGLIGENT MISREPRESENTATION]

### (Against All Defendants)

FIRST AMENDED COMPLAINT

96.     Defendant represented that Plaintiff would receive free rewards if Plaintiff entered personal information.

97.     Defendant's representation that Plaintiff would receive free rewards in exchange for Plaintiff's personal information was false.

98.     Defendant may have honestly believed that the representation was true, Defendant had no reasonable ground for believing the representation was true when it made it.

99.     Defendant intended that Plaintiff would rely on the free rewards if Plaintiff entered personal information.

100.    The Plaintiff reasonably relied on Defendant's representations.

101.    The Plaintiff was harmed because it has provided Defendant with personal information that has been sold to other parties.

102.    The Plaintiff's reliance on Defendant's representation was a substantial factor in causing Plaintiff's harm.

## **PRAYER FOR RELIEF**

### **(Against Defendant)**

A.  An Order from this Court declaring that Defendant violated California Business & Professions Code § 17529.5 by advertising in and sending unlawful spams.

B.  Liquidated damages against Defendants in the amount of $1,000 for each of at least 1,300 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $1,300,000.00, as set forth below:

C.  Attorneys' fees as authorized by Section 17529.5(b)(1)(C) and Code of Civil Procedure §1021.5 for violations of Section 17529.5.

D.  Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

E.  Punitive damages, in an amount to be determined by this Court.

F.  Costs of suit.

G.  Such other and further relief as the Court deems proper.

**PLAINTIFFS RESPECTFULLY DEMANDS FOR JURY TRIAL**

Dated: July 20, 2020

By: *Brian M. Heit*

Brian M. Heit, Esq.
HEIT LAW GROUP, P.C.
*Attorney for Plaintiffs*

1  **Brian M. Heit, Esq., SBN 302474**
   **HEIT LAW GROUP, P.C.**
2  340 South Lemon Avenue, Suite 8933
   Walnut, CA 91789
3  Telephone (310) 744-5227
   Facsimile (850) 254-1950
4  Brian@Heitlawgroup.com
   *Attorney for Plaintiffs*
5

6                **UNITED STATES DISTRICT COURT**

7                **NORTHERN DISTRICT OF CALIFORNIA**

8

9                                         **Case Number:** 3:20-cv-03816-JCS
10
    COQUESE HOLDEN, an individual,
11  KRISTY FONTES, an individual;            **DECLARATION OF WILLOW**
    STEPHANIE HELLER, an individual;        **ASHLYNN**
12  LASHANA GRANT, an individual;
    BRYAN HILLIARD, an individual;
13  STEVEN HOFFER, an individual;
    DIEDRE LOVE, an individual;
14  ANGELA JOHNSON, an individual;
    NOAH MEINER, an individual;
15  NACE REYNOLDS, an individual;
    JUANITA WILLIAMS, an individual,
16
17          Plaintiff,

18  vs.

19  FLUENT, INC. a Delaware corporation doing
20  business in California, and, DOES 1-50,
    inclusive,
21
22          Defendants.

23

24

25

26

27

28

Declaration of Willow Ashlynn

Doc ID: 253213f629ef0fb8de946df2e0dc908901c71e73

I, Willow Ashlynn, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. I make this statement of my own personal knowledge and if called to testify, could and would testify truthfully thereto.

1.       I am a third-party consultant working with Heit Law Group as a digital forensic consultant in regard to the case at hand.

2.       I relied on the representation of Fluent's unsolicited commercial email advertisements sent to the Plaintiffs emails in conducting my investigation.

3.       I based my reliance on Fluent's representation of a free rewards, such as Amazon gift cards and more sent to the Plaintiffs emails in conducting my investigation.

4.       I based on my reliance of Fluent's representation completed Fluent surveys sharing personal information in exchange for free rewards as were represented in the emails.

5.       I completed Fluent survey's in full which represented free rewards at completion.

6.       I never received a reward in exchange for filling out surveys.

7.       I would not have filled out surveys from Fluent without the representation made by Fluent had there been no representation of reward.

8.       I received unsolicited spam emails containing third party domains.

9.       I relied on the third-party domains in trusting the emails were from credible sources, and not were not spam.

10.       I reviewed unsolicited commercial email advertisements received by Plaintiffs emails on their California email address which in turn caused their email address to become bombarded with spam.

_____

Willow Ashlynn

Declaration of Willow Ashlynn

Doc ID: 253213f629ef0fb8de946df2e0dc908901c71e73

HEIT LAW GROUP
PROFESSIONAL CORPORATION
340 South Lemon Avenue, Suite 8933, Walnut, CA 91789

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Spam Declaration BMH 200720 v3.pdf |
| **FILE NAME** | Spam%20Declaratio...20200720%20v3.pdf |
| **DOCUMENT ID** | 253213f629ef0fb8de946df2e0dc908901c71e73 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was requested from app.clio.com

## Document History

| | | |
|---|---|---|
| SENT | **07 / 21 / 2020**<br>00:00:01 UTC | Sent for signature to Willow Ashlynn (hydeandco@protonmail.com) from justin@heitlawgroup.com<br>IP: 67.174.199.89 |
| VIEWED | **07 / 21 / 2020**<br>00:01:43 UTC | Viewed by Willow Ashlynn (hydeandco@protonmail.com)<br>IP: 174.194.152.21 |
| SIGNED | **07 / 21 / 2020**<br>00:04:12 UTC | Signed by Willow Ashlynn (hydeandco@protonmail.com)<br>IP: 174.194.152.21 |
| COMPLETED | **07 / 21 / 2020**<br>00:04:12 UTC | The document has been completed. |