1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

COQUESE HOLDEN, et al.,

Plaintiffs,

8

v.

9
10

FLUENT, INC., et al.,

Defendants.

11

Case No.  20-cv-03816-JCS

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULE 12(B)(6) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER RULE 12(E)**

Re: Dkt. No. 17

12
13
14

**I.       INTRODUCTION**

15

        This action was removed from San Mateo County Superior Court on the basis of diversity

16

jurisdiction.  *See* Notice of Removal (dkt. 1).  In the First Amended Complaint, dkt. no. 15

17

("FAC"), Plaintiffs Coquese Holden and ten other individuals name as defendants Fluent, Inc. and

18

Fluent, LLC (collectively, "Fluent"), as well as fifty individuals identified only as Does 1–50.

19

Plaintiffs assert three state law claims against Fluent based on "at least 1,300 emails" ("the

20

emails") they allegedly received from Fluent.  Presently before the Court is Fluent's Motion to

21

Dismiss First Amended Complaint Under Rule 12(b)(6) Or, In The Alternative, For a More

22

Definite Statement Under Rule 12(e) ("Motion").  The Court held a hearing on the Motion on

23

November 20, 2020.  For the reasons set forth below, Fluent's Motion is GRANTED.[1]

24
25
26
27
28

_____

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court<br>Northern District of California

## II.  BACKGROUND

### A.  Allegations in First Amended Complaint[2]

Plaintiffs Coquese Holden, Kristy Fontes, Stephanie Heller, Lashana Grant, Bryan Hilliard, Steven Hoffer, Diedre Love, Angela Johnson, Noah Meiner, Nace Reynold, and Juanita Williams allege that they were citizens of California and domiciled in California at the time that they received the emails that are the basis of their claims.  FAC ¶¶ 12–22.  They further allege that they accessed the emails from California.  *Id.*  According to Plaintiffs, Defendant Fluent Inc. is "a business entity . . . and is now, and was at all relevant times, a Delaware corporation with a primary place of business in New York, New York doing business and soliciting California residents using unlawful email practices."  *Id.* ¶ 23.[3]

Plaintiffs allege that Fluent sends "unsolicited spam emails to individuals baiting them with free offerings in exchange for inputting personal information" that it then sells to other parties.  *Id.* ¶ 3.  According to Plaintiffs, Fluent never provides the free "offering" but "continues to obtain more [and] more information until the consumer gives up on their pursuit of the free offer."  *Id.* ¶ 4.  Plaintiffs allege that the emails Fluent sends are "unsolicited commercial email advertisements," *id.* ¶ 7, and that they are "unlawful because they are materially false and deceptive, by inclusion of third parties' domain names without permission by the third parties, and/or materially falsified/misrepresented information in the email headers[.]"  *Id.* ¶ 33.

Plaintiffs allege that Fluent "advertised in, sent, and/or conspired to send [Plaintiffs] at least one thousand and three hundred (1,300) unlawful spam" emails.  FAC ¶ 31.  According to

---

[2] Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this order summarizes Plaintiffs' allegations as if true.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Nothing in this order should be construed as resolving any issues of fact that might be disputed at a later stage of the case.

[3] The FAC does not contain any separate factual allegations about the second defendant, Fluent LLC, which was added after the case was removed to federal court.  Rather, it treats the two defendants as a single corporate entity for the purposes of subject matter jurisdiction.  Because "an LLC is a citizen of every state which its owners/members are citizens," *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006), diversity jurisdiction depends on the citizenship of all of the members of the LLC and may be destroyed if any owner or member of Fluent LLC is a citizen of California.  At oral argument, counsel for Fluent represented to the Court that Fluent LLC's only member is Fluent, Inc.  Because Fluent, Inc. is a Delaware corporation that has its primary place of business in New York, the addition of Fluent LLC as a defendant does not destroy diversity jurisdiction in this case.

Plaintiffs, "most of the spams that [they] received advertising Fluent's website showed purported names in the Name From field, *e.g.*, 'Fargo Rewards,' 'Wells-Fargo-Survey,' 'US Bank-Visa Card Rewards!,' 'Amazon Reward Zone,' and 'Scott Peru.'" *Id.* ¶ 41.  The sample email reproduced in the same paragraph carries the header: "ALERT: (1) AMAZON© Surprise for Kristy"; the line below states: "**Save by Day <promo@savebyday.com>**" and below that there is a line with the following: "To: luv16starrz@yahoo.com." *Id.*  In the body of the email, a prominent caption "SAVE by day" is followed by:

<u>AMAZON SURPRISE FOR KRISTY</u>
An AMAZON© card has been loaded with a mystery amount for you kristy.
Reveal the balance and receive the card by using the instructions at
attached website.

AMAZON© Surprise

*Id.*  Plaintiffs allege that the "From Names" are "false, or at minimum, misleading, as they represent that the spams are from Wells Fargo, US Bank, Amazon, or an individual named Scott Peru, as opposed to Fluent." *Id.*  ¶ 42.  They further allege that Fluent may not have registered these "generic phrases" as fictitious business names and that even if they have, they do not identify Fluent. *Id.* ¶ 43.  Plaintiffs allege that Fluent intentionally used these misleading "From Names" so that Recipients would not know who the emails were from when viewing them from the "inbox view," forcing recipients to open them in order to determine whether they were from their bank or some other entity to which they had consented to receive commercial advertisements. *Id.* ¶ 43–44.

Plaintiffs also allege that "[m]ost of the spams that [they] received contain email headers with falsified and/or misrepresented information." *Id.* ¶ 47.  Some allegedly carried headers advertising Fluent's "GET ISNTAHARD products," aimed at erectile dysfunction. *Id.* ¶ 48. Plaintiffs allege that the volume of emails with such headers indicates that Fluent was not aware if the recipients had this condition, supporting the inference that Plaintiffs did not consent to receive them. *Id.*  Plaintiffs also allege that they received emails from Fluent "with falsified . . . headers which claim to contain gift cards from 'Wells-Fargo[ ]'" and emails that "knowingly use[d] inflammatory, false, and misrepresented Subject Lines referencing mortgage refinancing in order

3

to have recipients open the emails and sign up for its products and services[.]"  *Id.* ¶¶ 49–50.

As an example of emails Plaintiffs received with misleading subject lines, Plaintiffs reproduce an email with the subject line "Wells Fargo Wants to Give you $1,000!" that purports to be from "Scott Peru <info@sctiprsk.com."  *Id. ¶* 50.  The body of the email states as follows:

> Wells Fargo is a very popular bank across the United States. They are famous for offering current and new customers really generous bonuses.  Currently, they are offering $1,000 to people for all sorts of reasons.  Please review details by following the link below right now.
>
> Resource type:  Income
> Eligibility:  Open
>
> **Get Your $1,000 Now**
>
> We look forward to assisting you in finding helpful information and resources that you might be interested in.
>
> Sincerely,
>
> ConsumerAlerts Editor
>
> You are receiving this message because you are signed up to receive helpful information and resources from Consumer-Alerts.net.  If at anytime you no longer wish to receive these messages, <u>please click here to unsubscribe</u>.

*Id.*

Plaintiffs allege that Fluent "sent spam emails using the Amazon, Costco, and US Bank domain names for the purposes of misleading Plaintiffs without the consent of Amazon, Costco, or US Bank" and point to the "example above" (which the Court reads as referring to the sample email reproduced in  ¶ 50) to show that the third-party domain names were not being used for the purposes of "comparative advertising" but instead to "deceive spam recipients."  *Id.*  ¶ 51. Plaintiffs allege that Fluent advertised in and sent "materially false and deceptive" emails, FAC ¶ 84, and "intended to deceive recipients of their spam messages."  *Id.* ¶ 66.  Plaintiffs further allege that Fluent "went to great lengths to create falsified and misrepresented information" in the email headers and subject lines.  *Id.* ¶ 67.  Plaintiffs allege they "reasonably relied on the representations made by Fluent" by "shar[ing] personal information" and "received no rewards, merely more spam."  *Id.* ¶¶ 81–82.  Plaintiffs also attached to the FAC a declaration from a "digital forensics consultant" who states that she "relied on the third-party domain names in

United States District Court
Northern District of California

trusting the emails were from credible sources." *Id.* at ECF p. 21.  Plaintiffs allege that they were "harmed by having their personal information used for unsolicited commercial email purposes." *Id.* ¶ 75.

Plaintiffs' complaint asserts the following claims: 1) materially false and deceptive email advertisements in violation of California Business and Professions Code section 17529.5 ("California Email Law"), *id.* ¶¶ 82–88; 2) intentional misrepresentation, *id.* ¶¶ 89–95; and 3) negligent misrepresentation, *id.* ¶¶ 96–102.  The California Email Law claim is asserted under two theories: 1) that Fluent violated  section 17529.5(a)(2) by sending Plaintiffs spam emails with "false and misrepresented email headers," FAC ¶¶ 46–49; and 2) that Fluent violated section 17529.5(a)(1) by using third party domain names without the consent of the third party.  FAC ¶¶ 51–52.[4]

### B.   The California Email Law

The California Email Law provides in relevant part as follows:

> (a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:
>
> (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.
>
> (2) The e-mail advertisement contains or is accompanied by falsified misrepresented, or forged header information . . . .
>
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Cal. Bus. & Prof. Code § 17529.  A domain name is defined as "any alphanumeric designation that is registered with or assigned by any domain name registrar as part of an electronic address on the Internet."  Cal. Bus. & Prof. Code § 17529.1(e).

---

[4] Plaintiffs conceded at oral argument that as currently pled, the complaint does not include a claim under Cal. Bus. & Prof. Code section 17529.5(a)(3).  Plaintiffs intend to assert such a claim when they amend the FAC.

United States District Court
Northern District of California

C.    **Contentions of the Parties**

1. **The Motion**

In the Motion, Fluent argues that Plaintiffs' claims should be dismissed for failure to plead with particularity under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which it contends applies to all three claims because they sound in fraud.  Motion at 5 (citing *Blanchard v. Fluent, Inc.*, No. 17-CV-04497-MMC, 2017 WL 4224768, at *4 (N.D. Cal. Sept. 22, 2017) with respect to California Email Law claim).  Fluent argues that in order to meet this standard, Plaintiffs must allege the "who, what, when, where, and how" of the alleged fraud and that they failed to do so in the FAC.  *Id.* at 6 (quoting *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503 SC, 2009 WL 4723338, at *3 (N.D. Cal. Dec. 4, 2009) (internal quotation marks and citation omitted)).  In particular, Fluent asserts, Plaintiffs' complaint "must provide, at a minimum, the specifics regarding (including an example of) each type of allegedly false or misleading advertisement, the number of those advertisements and the date ranges of the emails in each category."  *Id.* (quoting *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 945 (N.D. Cal. 2009)).  It argues that the allegations that Plaintiffs received 1,300 emails fall short because Plaintiffs only include general allegations of falsity and misrepresentation.  *Id.* at 7 (citing FAC ¶¶ 47–50).  Furthermore, the  two sample emails are not sufficient, Fluent contends, because "they do not allege that those samples are identical to the other 1,298 (or more) emails at issue" and the FAC "makes clear that the emails at issue are individual and have unique characteristics, many of which are not present in the samples."  *Id.* Even if Plaintiffs are permitted to assert their claims on the basis of the two samples, they argue, the claims should be dismissed as to theories that are not supported by the samples.  *Id.*

Fluent argues further that Plaintiffs' California Email Law claim as currently pled fails for two additional reasons.  *Id.* at 8.  First, Fluent argues that Plaintiffs' claim under section 17529.5 (a)(2) should be dismissed because that section only recognizes a claim for "falsified, misrepresented, or forged *header* information" whereas Plaintiffs' factual allegations in support of this claim "don't discuss header information" and Plaintiffs refer to  false and misleading "*subject* lines" in their FAC rather than "header information."  *Id*. at 8 (quoting Cal. Bus. & Prof. Code §

United States District Court
Northern District of California

17529.5(a)(2)) (emphasis added).  According to Fluent, the California Email Law "treats 'subject lines' as separate from 'header information'" and the former is addressed in section 17925.5(a)(3). *Id.* (citing *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 343 (2010); *Wagner v. Spire Vision LLC*, No. C 13-04952 WHA, 2015 WL 876514, at *6 (N.D. Cal. Feb. 27, 2015); *Greenberg v. Digital Media Solutions, LLC,* No. CGC-18-572010, 2019 WL 1986758 (N.D. Cal. July 22, 2019)). Therefore, Fluent argues, the claim should be dismissed to the extent it is asserted under subdivision (a)(2).

Second, Fluent argues that Plaintiffs' "third party's domain name" theory under subdivision (a)(1) should be dismissed because Plaintiffs have not alleged that Fluent *advertised* in a deceptive commercial e-mail but only that it *sent* a deceptive email.  *Id.* at 9.  According to Fluent, section 17529.5(a)(1) only prohibits the former.  *Id.* (citing *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 820 (2011)).  In any event, Fluent contends, the claim fails because "Plaintiffs fail to plead any supporting facts, such as what the specific domain names are or when they were included in any email."  *Id.*

Fluent further points to the allegation in Paragraph 51 referring to the "example above demonstrating third party domain not being used for the permitted purpose of comparative advertisement."  *Id.*  It argues that the "example above" does not support the claim asserted under section 17529.5(a)(1), however, because the "sample email is from info@sct1prsk.com . . . [b]ut the complaint doesn't allege that the sct1prsk.com domain name was used without permission."  *Id.*  at 9–10.  On the other hand, Fluent argues, "the example does not reference Amazon, Costco, or US Bank domain names."  *Id.*

Next, Fluent argues that Plaintiffs' intentional and negligent misrepresentation claims should be dismissed because Plaintiffs have not alleged facts showing justifiable reliance and actual damages, which are required elements of both claims.  *Id.* at 10 (citing *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997) (intentional misrepresentation); *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (1997) (negligent misrepresentation)).  Fluent argues that the declaration from a third party "digital forensics consultant" attached to the FAC stating that she "relied on the representation" in "conducting [her] investigation" does not sufficiently allege

United States District Court
Northern District of California

7

reliance because it is the plaintiff, and not a third party, who must justifiably rely on an alleged false statement in order to state a claim. *Id.* at 10–11. Moreover, Fluent asserts, even if Plaintiffs adequately alleged justifiable reliance, the claims fail because "Plaintiffs do not allege facts to suggest they were damaged beyond the de minimis time spent clicking the link or filling out a survey." *Id.* at 11.

Lastly, Fluent argues that if the Court declines to dismiss Plaintiffs' claims it should order them to provide a more definite statement of their claims pursuant to Federal Rule of Civil Procedure 12(e) because the FAC does not contain sufficient details to allow Fluent to "properly answer the complaint." *Id.* at 11. "At a bare minimum," Fluent asserts, Plaintiffs provide to Fluent all 1,300 emails so that it can determine whether to admit or deny Plaintiffs' allegations and identify applicable defenses. *Id.* Fluent argues that without the emails it cannot determine whether there may be a defense to Plaintiffs' claims based on statute of limitations; it also contends the allegations in the FAC suggest that there are affirmative defenses that might apply where the identity of the sender is readily ascertainable from the body of the email or the emails are traceable. *Id.* at 11–12 (citing *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1407 (2014) and FAC ¶¶ 6, 45). Therefore, Fluent argues that Plaintiffs should be required "(1) to attach to their complaint every email that they allege Fluent advertised in, in violation of the California Email Law, (2) to identify which of [Plaintiffs'] various legal theories apply to which specific emails, and (3) to identify how each of those theories applies to each specific email." *Id.*

### 2. Opposition

In the Opposition, Plaintiffs do not dispute that Rule 9(b) applies to all of their claims but argue that the claims are pled with sufficient particularity to satisfy that rule. Opposition at ECF pp. 2–3.[5] Without addressing the specific arguments advanced by Fluent in the Motion, Plaintiffs argue generally that "[t]he first amended complaint is clear as to the who, what, when, where, and how of the misconduct" because it alleged that Fluent "sent emails that are misleading while claiming throughout the emails to have rewards from companies such as but not limited to

---

[5] Because the Opposition brief does not contain page numbers, the Court cites to the page numbers assigned by its electronic case filing system ("ECF").

United States District Court
Northern District of California

McDonalds, Wells Fargo, Costco, and more." *Id.* at p. 3.  It also points to the affidavit of the forensic investigator it attached to the FAC, arguing that it "demonstrates the misleading and fraudulent emails sent by [Fluent] to Plaintiffs with promised rewards." *Id.* at p. 2.  Finally, it rejects Fluent's assertion that it does not have sufficient details to respond to the FAC, asserting that Fluent "has been provided with a considerable sample size of spam emails through a secure link." *Id.* at p. 3.  According to Plaintiffs, Fluent's argument that they should be required to turn over all 1,300 emails is simply "harassment" in light of the emails that have already been provided, and moreover, Fluent will have access to additional emails during discovery.  *Id.*

Plaintiffs also reject Fluent's argument that their "subject line" theory fails under California Email Law subdivision (a)(2), asserting that Fluent "misunderstands" Plaintiffs' claim. *Id.* at p. 3.  In particular, Plaintiffs contend the claim is adequately pled because they allege in the FAC that "most of the spam received contain headers with falsified and/or misrepresented information" and also allege as an example that "many emails are sent stating that there are rewards waiting for the recipient to claim" when in fact "[t]hese rewards are non-existent and are unattainable by a spam recipient." *Id.*  Plaintiffs state in the caption of the section of their Opposition that subdivision (a)(2) "does regulate subject lines" but do not address in the discussion the distinction Fluent makes in the Motion between "headers" and "subject lines" or the cases upon which Fluent relies in support of its argument that subdivision (a)(2) does not apply to subject lines.  Rather, Plaintiffs argue without citing any supporting authority that Fluent's position is incorrect because it "aims to undermine the policy behind the California legislature in enacting the . . . law [by] claiming subject lines do not contribute to the misleading and false nature of the spam at issue." *Id.*  Elsewhere in their Opposition, Plaintiffs also contend "there is a material dispute regarding triable issues of fact: whether the 'header' information and 'subject' lines of the alleged unlawful spam e-mails are materially misleading in violation of section 17529.5." *Id.* at p. 2.

Plaintiffs also argue that their claim under subdivision (a)(1) should not be dismissed because third party domain names appear throughout the 1,300 emails. *Id.* at p. 4.  Apparently referring to the sample email reproduced in Paragraph 50 of the FAC, Plaintiffs point to "the

9

example including Wells Fargo's name throughout the email claiming to have information regarding Wells Fargo rewards." *Id.*  Responding to Fluent's argument that the sample email does not support the third-party domain name theory because it was sent from info@sct1prsk.com and there is no allegation that that domain name was used without permission, Plaintiffs argue that "[t]he sc1tprsk.com [sic] domain is used in order to deceive spam recipients that the emails are from representatives that may work for [Wells Fargo] in conjunction with the fake rewards offered by [Fluent]." *Id.*

Plaintiffs reject Fluent's argument that they have failed to adequately allege reliance and damages in support of their misrepresentation claims, arguing that they "provide facts demonstrating reliance and damages." *Id.*  Plaintiffs argue that justifiable reliance is "demonstrated through the use of famous marks such as Wells Fargo throughout the spam emails which not only bypass spam filters but also thrive on the deceptive acts of misleading spam recipients into believing the email to actually contain a free reward from a well-known company without ever receiving one." *Id.*  Plaintiffs argue that damages are "demonstrated by the volume of spam emails which bypass spam filters on their personal California emails through their use of misleading and deceptive from names, headers, and use of third-party domain names." *Id.*  According to Plaintiffs, "the legislative intent in the California Legislature pass[ing] section 17529.5 of the California Business and Professions [C]ode acknowledge the damage to one's email from receiving massive volumes of spam emails." *Id.*  They further assert that the volume of emails Plaintiffs received is sufficient to allege damages because "the existence of Spam Filters, Section 17529.5 of the California Business and Professions Code, and Section 17529 of the California Business and Professions Code demonstrate the overflow of spam emails in email inboxes to not be minimal or nominal damages." *Id.* at p. 5.

Plaintiffs do not respond to Fluent's request for alternative relief under Rule 12(e) requiring that they be ordered to provide a more definite statement.

### 3.  Reply

In its Reply, Fluent contends Plaintiffs have failed to offer anything but "conclusory statements as to how they satisfy" their burden to plead with particularity, that they "insist that

10

1   their legal theories are valid but do not cite a single decision to support that conclusion" and that

2   they "fail to offer a single solution to cure these defects if given leave to amend."  Reply at 1.

3   Consequently, Fluent argues, Plaintiffs should not be given leave to amend their complaint

4   because amendment would be futile.  *Id.*

5        Fluent argues that in their Opposition, Plaintiffs concede that all of their claims must be

6   pleaded with particularity under Rule 9(b) but do not point to any specific allegations in the FAC

7   that provide the "who, what, when, where and how of the misconduct" that is the basis of their

8   claims.  *Id.* at 1–2.

9        Fluent also rejects Plaintiffs' argument that there are triable issues of material facts as to

10  whether a subject line constitutes "header information" under the California Email Law, as well as

11  their assertion that Fluent's position as to the section 17529.5(a)(2) claim is at odds with the

12  legislative intent behind that law, arguing that "the California legislature did address subject lines

13  in the California Email Law and specifically chose to impose different restrictions on them than it

14  did on header information."  *Id.* at 2–3.

15       With respect to the section 17529.5(a)(1) claim, Fluent argues that Plaintiffs' reliance on

16  references to Wells Fargo in one of the  sample emails does not save the claim because "the

17  California Email Law doesn't prohibit the use of corporate names or trade names" but " only

18  prohibits the unauthorized use of 'domain names,' which the statute specifically defines as 'any

19  alphanumeric designation that is registered with or assigned by any domain name registrar as part

20  of an electronic address on the Internet.'"  *Id.* at 3 (quoting Cal. Bus. & Prof. Code § 17529.1(e)).

21  As it argued in the Motion, Fluent contends the only domain name referenced in the FAC is

22  sct1prsk.com, "[b]ut Plaintiffs do not allege that it belongs to a third party and was used without

23  permission, which is a required element of the claim."  *Id.*

24       Fluent argues that Plaintiffs are also incorrect in their assertion that they sufficiently

25  alleged damages based on the volume of emails they allegedly received because the use of famous

26  marks allowed them to bypass spam filters.  *Id.* at 3–4.  According to Fluent, the Supreme Court

27  rejected a similar argument in *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 337 (2010).

28  *Id.* at 4.  Fluent argues further that justifiable reliance cannot be based on "a third party's or a

spam filter's reliance." *Id.* Instead, Fluent asserts, it is "met 'when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into [a] contract or other transaction.'" *Id.* (quoting *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)). According to Fluent, "[s]ince Plaintiffs' argument is not that the alleged misrepresentation caused Plaintiffs to act or refrain from acting in any way altering their legal relations, they cannot meet the justifiable reliance element." *Id.*

Finally, Fluent points out that Plaintiffs did not request leave to amend or identify any amendments it would make that would cure the deficiencies in the complaint if they were permitted to do so. *Id.* at 5. Under these circumstances, Fluent contends it is appropriate to dismiss Plaintiffs' claims without leave to amend. *Id.*

## III.   ANALYSIS

### A.   Legal Standards

#### 1.   Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus.*, 51 F.3d at 1484. Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v.*

United States District Court
Northern District of California

*Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2.  Rule 12(e)

Rule 12(e) states that a party may move for a more definite statement of a pleading "so vague or ambiguous" that the responding party cannot reasonably prepare a response.  Fed. R. Civ. P. 12(e).  The motion "must point out the defects complained of and the details desired."  *Id.* However, the purpose of a Rule 12(e) motion is to attack unintelligibility, not simply lack of detail.  *Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009).  Thus, where the detail sought is obtainable through discovery, the motion should be denied.  *Id.*  A Rule 12(e) motion is "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably be expected to frame a proper response."  *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011).

### 3.  Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for claims based on fraud.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct, but the claim itself does not contain fraud as an essential element, and (3) to any allegations of fraudulent conduct, even when

1    none of the claims in the complaint 'sound in fraud.'"  *Davis v. Chase Bank U.S.A., N.A.*, 650 F.

2    Supp. 2d 1073, 1089–90 (C.D. Cal. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

3    1102–06 (9th Cir. 2003)).  To satisfy Rule 9(b), the plaintiff must include "the who, what, when,

4    where, and how" of the fraud.  *Vess*, 317 F.3d at 1106 (citations omitted).  "The plaintiff must set

5    forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfield, Inc.*,

6    42 F.3d 1541, 1548 (9th Cir. 1994)  A claim for fraud must be "specific enough to give defendants

7    notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

8    defend against the charge and not just deny that they have done anything wrong."  *Semegen v.*

9    *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

**B.    Whether Plaintiffs' Claims Should be Dismissed Under Rule 9(b)**

11        Fluent argues that all of Plaintiffs' claims are subject to dismissal for failure to plead with

12   particularity as required by Rule 9(b).  The Court agrees.

**1.   Whether Rule 9(b) Applies to Plaintiffs' Claims**

14        As a preliminary matter, the Court finds that all of Plaintiffs' claims are governed by Rule

15   9(b)'s heightened pleading standard because they sound in fraud, as Plaintiffs do not dispute.

16        First, the Court finds that the California Email Law claim sounds in fraud because it is

17   based on allegations that Fluent advertised in and sent "materially false and deceptive" emails,

18   FAC ¶ 84, "intended to deceive recipients of their spam messages," *id.* ¶ 66, and "went to great

19   lengths to create falsified and misrepresented information" in the email headers and subject lines,

20   *id.* ¶ 67.  *See Blanchard v. Fluent*, No. 17-cv-04497-MMC, 2017 WL 4224768, at *4 (N.D. Cal.

21   Sept. 22, 2017) (applying Rule 9(b) to a section 17529.5 claim where plaintiffs alleged "falsified

22   and/or misrepresented information in From Names, domain name registrations, and Subject Lines"

23   (internal quotation marks omitted)); *Asis Internet Services v. Optin Global*, No. C 05-5124-CW,

24   2006 WL 1820902, at *4 (N.D. Cal. June 30, 2006) (applying Rule 9(b) to a section 17529.5 claim

25   where plaintiffs alleged fraudulent headers and subject line information).

26        For the same reason, the Court finds that Plaintiffs' claim for negligent misrepresentation

27   sounds in fraud and must be pled with particularity under Rule 9(b).  *See Najarian Holdings LLC*

28   *v. Corevest Am. Fin. Lender LLC*, No. 20-CV-00799-PJH, 2020 WL 5993225, at *5 (N.D. Cal.

United States District Court
Northern District of California

14

United States District Court
Northern District of California

Oct. 9, 2020) (holding that while no controlling Ninth Circuit precedent "requires application of Rule 9(b) to negligent misrepresentation claims," the negligent misrepresentation claim in that case sounded in fraud and therefore was subject to Rule 9(b));  *Lack v. Cruise Am., Inc*., No. 17-CV-03399-YGR, 2017 WL 3841863, at *4 (N.D. Cal. Sept. 1, 2017) (holding that negligent misrepresentation claim sounded in fraud and therefore was subject to Rule 9(b) pleading standard);  *Nocher Enterprises, Inc. v. Aventus Outreach, LLC*, No. CV183897RSWLJEMX, 2018 WL 6067438, at *8 (C.D. Cal. Nov. 16, 2018) ("Some Ninth Circuit courts are divided as to whether Rule 9(b) applies to negligent misrepresentation claims generally, but courts consistently have found that where the plaintiff's claim sounds in fraud, Rule 9(b) applies.").

Finally, it is generally accepted that claims for intentional misrepresentation sound in fraud and therefore are subject to Rule 9(b).  *See Avakian v. Wells Fargo Bank, N.A*., No. 19-55659, 2020 WL 6285188, at *1 (9th Cir. 2020) (unpublished) ("Borrowers' claims for unfair business practices, intentional misrepresentation, fraud, and negligent misrepresentation are all fraud-based claims, and must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.").  Therefore, the Court concludes that Rule 9(b) applies to the intentional misrepresentation claim as well.

### 2.   Whether Plaintiffs' Claims are Pled With Particularity

To meet Rule 9(b)'s heightened pleading requirement, Plaintiffs must allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  In addition, because their claims are based on alleged false statements, Plaintiffs must "plead evidentiary facts" that establish the "statement was untrue or misleading when made." *Fecht v. Price Co*., 70 F.3d 1078, 1082 (9th Cir. 1995).  These standards were applied in *Blanchard v. Fluent, Inc*., in which the plaintiffs asserted a claim under the California Email Law against multiple defendants based on allegations that they had received "almost 1,300 unlawful unsolicited commercial emails" from the defendants.  No. 17-CV-04497-MMC, 2017 WL 4224768, at *1 (N.D. Cal. Sept. 22, 2017).  In that case,  the court found that the plaintiffs  had not satisfied Rule 9(b)'s pleading requirements as  to one of the defendants ("Panda") because the complaint  alleged that Panda had sent "at least 75"  of the emails but did

1    not "provide the date(s) on which those emails were sent, the names of the plaintiff(s) to whom

2    they were sent, or any evidentiary facts to support a finding that any statement in any email sent

3    by Panda Mail was untrue or misleading at the time such email was sent." 2017 WL 4224768, at

4    *4. The court recognized in a footnote that although the complaint included "factual allegations

5    sufficient to show some of the statements in some of the emails were untrue or misleading when

6    made (*see, e.g.*, FAC ¶ 54 (alleging '[s]ome of the spams have From Names that . . . are actively

7    false, claiming that the spams are from third-party companies (or products) that have nothing to do

8    with [d]efendants, e.g., "Sams," "Samsung Galaxy S5," "Target," and "Walmart"')), plaintiffs

9    ha[d] not alleged that any of those emails were sent by [Panda]." *Id.* at n. 5.

10        In *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, the court reached a similar

11    conclusion, finding that the plaintiff's claims under the California Email Law did not satisfy Rule

12    9(b). 622 F. Supp. 2d 935, 945 (N.D. Cal. 2009). The court noted that the "complaint specifie[d]

13    the number of emails at issue and the time frame in which they were sent, but beyond that it

14    provide[d] only general allegations and a few examples of the allegedly misleading

15    advertisements." *Id.* It "decline[d] to require [the] plaintiff actually . . . attach each email[,]"

16    finding that "such a requirement could create a prohibitive burden." *Id.* It also concluded that the

17    plaintiff did not need to "include in the pleading each email address to which the advertisements

18    were sent" because that information could be "readily obtained in discovery under a protective

19    agreement, to alleviate privacy concerns." *Id.* Instead, the court ordered the plaintiff to provide

20    "at a minimum, the specifics regarding (including an example of) each type of allegedly false or

21    misleading advertisement, the number of those advertisements and the date ranges of the emails in

22    each category." *Id.* The court's guidance was based, in part, on the plaintiff's representation at

23    the motion hearing that "a discrete number of scams or false-advertisement templates were

24    utilized" in the emails at issue in that case. *Id.*

25        Likewise, in *Asis Internet Servs. v. Subscriberbase Inc.*, the court found that the plaintiffs

26    had not satisfied Rule 9(b) in pleading their claim under the California Email Law where they had

27    alleged "2456 separate violations of section 17529.5, but only includ[ed] a handful of (i.e., twenty-

28    one) sample emails that specifically show[ed] the subject line, date, sender, and contents of the

emails." No. 09-3503 SC, 2009 WL 4723338, at *4 (N.D. Cal. Dec. 4, 2009). In that case, the court found that "[a]lthough [the] [p]laintiffs attach[ed] an appendix that apparently list[ed] every email subject line, . . . this lack[ed] important information about the sender, date, and content of the emails, and [did] not indicate how many copies of each email were received." *Id.* Recognizing that "it would be impractical to require the submission of 2,456 emails, or even 230 sample emails" reflecting the 230 unique subject lines contained in the emails in that case, the court ordered that the plaintiffs "submit an appendix that contain[ed] each subject line, the total number of emails that bore it, and specific information about each email that bore it, including the sender, the date it was sent, and the landing site to which the email direct[ed] the recipient." *Id.* In addition, it instructed the plaintiffs to "include with the amended complaint the sample emails that they included with their original Complaint" but noted that "they need not include full samples of all 230 types of [the] [d]efendants' emails." *Id.*

Here, the FAC offers two specific examples of emails that were allegedly received by Plaintiffs and includes general allegations as to the remaining 12,098 (or more) other emails. Plaintiffs' claims are alleged with sufficient specificity as to the two sample emails. Their allegations as to the remaining emails are not, however, sufficient to satisfy Rule 9(b). First, Plaintiffs do not allege that the two examples are representative of the remaining emails. Nor is it possible to discern from the conclusory allegations in the FAC when the remaining emails were sent or what aspect of each email is claimed to be unlawful—whether it is the name carried in the "Name From" field, the subject line, or the unauthorized use of a third-party domain name. Therefore, the Court concludes that all of Plaintiffs' claims must be dismissed for failure to plead with particularity under Rule 9(b).

**C.      Whether Plaintiffs' Claim Under Section 17529.5 (a)(1) is Adequately Alleged**

Under the California Email Law, it is unlawful to advertise in an email when "[t]he e-mail advertisement contains or is accompanied by a third-party's domain name without permission of the third party." Cal. Bus. & Prof. Code § 17529.5(a)(1). Fluent contends Plaintiffs' claim under subdivision (a)(1) fails because: 1) a defendant must be an "advertiser" in order to be liable under the California Email Law whereas here Plaintiffs allege Fluent is merely a "sender"; and 2) the

1    allegations in the FAC are too conclusory to raise a plausible inference that this section has been

2    violated.  While the first argument has no merit, the Court agrees with Fluent as to the second one.

3        The California Email Law is violated when "any person or entity . . . *advertise[s]* in a

4    commercial e-mail advertisement either sent from California or sent to a California electronic mail

5    address" where one of the three subdivisions applies.  Cal. Bus. & Prof. Code § 17529.5 (emphasis

6    added).  "Thus, by its plain terms, the statute is not limited to entities that actually send or initiate

7    a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-

8    mails." *Hypertouch, Inc. v. ValueClick, Inc*., 192 Cal. App. 4th 805, 820 (2011).  On the other

9    hand, the court in *Blanchard* concluded, as a matter of first impression, that a defendant that is

10   alleged to have merely sent a deceptive email but not to advertise in the email (in that case Panda)

11   cannot be held liable under the California Email Law. *Blanchard v. Fluent*, 2017 WL 4224768 at

12   *2.

13       Here, Fluent plucked a phrase from the FAC (found in paragraph 51) in which Plaintiffs

14   alleged that the emails were "sent" to suggest that they have not alleged that Fluent "advertised" in

15   the emails.  This argument is frivolous, however, as Plaintiffs repeatedly allege in the FAC that

16   Fluent advertised in the emails and refers to the emails as "advertisements."  *See, e.g.,* FAC ¶¶  7

17   ("Fluent sends unsolicited commercial email advertisements which misrepresent the facts stated in

18   the emails"), 26 ("FLUENT sent unsolicited commercial email advertisement to residents of the

19   Northern District"), 29 ("The emails at issue are 'commercial email advertisements' because they

20   were initiated for the purpose of advertising and promoting the sale of FLUENT's products and

21   services."),  31 ("FLUENT advertised in, sent, and/or conspired to send at least one thousand and

22   three hundred (1,300) unlawful spams"), 45 ("some of the spams did not identify FLUENT – the

23   advertiser – in the body of the spams."), 53 ("FLUENT contracted with third party advertising

24   networks and affiliates to advertise its websites"),  84 ("Defendant advertised in, sent, and/or

25   caused to be sent at least one thousand and three hundred (1,300) materially false and deceptive

26   unsolicited commercial email advertisements."). As the FAC repeatedly alleges that Fluent

27   advertised in the emails, Fluent's argument that the (a)(1) claim fails on this basis is incorrect.

28       On the other hand, the Court agrees that this claim is inadequately pled because the FAC

United States District Court
Northern District of California

18

does not identify any specific domain names except the domain names shown in two sample emails reproduced in the FAC, namely, savebyday.com, scot1prsk.com, and Consumer-Alerts.net. *See* FAC ¶¶ 41, 51.  As to these domain names, however, Plaintiffs have included no allegations that their use was unauthorized.  Consequently, the Court finds that Plaintiffs' allegations that Fluent used domain names belonging to third parties without their consent are "mere conclusory statements" that are insufficient to state a claim. *See Iqbal*, 556 U.S. at 663.

### D.   Whether Plaintiffs' Claim Under Section 17529.5(a)(2) is Adequately Alleged

Under the California Email Law, it is unlawful to advertise in an email when "[t]he e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information."  Cal. Bus. & Prof. Code § 17529.5(a)(2).  Although the California Email Law does not define the term "header," the California Supreme Court has looked to the definition of that term in the analogous federal law, which "defines 'header information' as 'the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.'"  *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 340 n. 5 (2010); *see also Wagner v. Spire Vision*, No. C 13-04952 WHA, 2015 WL 876514, at *3 (N.D. Cal. Feb. 27, 2015) ("The California Supreme Court has defined header information as 'the source, destination, and routing information attached to an electronic mail message, including the originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.'").

Here, Plaintiffs allege that the emails contained false or misrepresented headers, but the allegations in the FAC offered in support of that claim point to subject lines instead of headers; conversely, Plaintiffs do not point to any source, definition or routing information that is alleged to be false or misrepresented in their FAC.  As the court in *Wagner* concluded, the definition of header information adopted by the California Supreme Court "clearly does not include an email's subject line," which is explicitly covered in subdivision (a)(3).  *Wagner*, 2015 WL 876514, at *6.  Plaintiffs' vague assertion to the contrary is supported by no authority and is contradicted by the

19

1    language of the statute and the cases discussed above.  Consequently, the Court finds that the FAC

2    fails to state a claim under section 17529.5(a)(2).

3        **E.    Intentional and Negligent Misrepresentation**

4        Fluent challenges Plaintiffs' claims for intentional and negligent misrepresentation on the

5    basis that Plaintiffs have not alleged justifiable reliance or actual damages as a result of their

6    justifiable reliance.  The Court agrees.

7        Under California law, the essential elements of a claim for intentional misrepresentation

8    are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and

9    justifiable reliance, and (5) resulting damage.  *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217,

10   230–31 (2013) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).  The essential

11   elements of a negligent misrepresentation claim "are the same except that it does not require

12   knowledge of falsity but instead requires a misrepresentation of fact by a person who has no

13   reasonable grounds for believing it to be true."  *Id.*  For both claims, "the plaintiff must have acted

14   in reliance upon the truth of the representation and . . . must have been justified in relying upon the

15   representation."  *Christiansen v. Roddy*, 186 Cal. App. 3d 780, 786 (1986).

16       Plaintiffs' theory of these claims seems to be that they relied on the misleading headers or

17   subject lines and third-party domain names in the emails, causing them to believe that the offers

18   were legitimate and therefore to click on the links and complete the surveys that would

19   purportedly result in the offered rewards.  However, they do not allege that they were damaged

20   because they wasted their time filling out surveys based on the mistaken belief that they would

21   receive rewards or because they did not, in fact, receive the rewards.  Rather, they point to the fact

22   that under the California Email Law, simply receiving a large quantity of spam emails is

23   considered to be a cognizable injury.

24       The court rejected a similar theory in *Balsam v. Trancos, Inc.,* 203 Cal. App. 4th 1083,

25   1108 (2012).  In that case, the plaintiff attempted to establish that he had been harmed by

26   receiving a large volume of spam emails in order to prevail on a claim under the California Legal

27   Remedies Act ("CLRA"), citing legislative findings about the harm caused by abusive commercial

28   email that were adopted as part of the California Email Law, *see* Cal. Bus. & Prof. Code section

United States District Court
Northern District of California

20

17529.  *Id.*  Yet the plaintiff's CLRA claim (like the Plaintiffs' misrepresentation claims here) required that he establish that the deceptive emails *caused* the damage that was the basis for his claim.  *Id.*  The court found that he could not satisfy that burden based on the volume of emails he received, explaining as follows:

> Balsam was required to prove "not only that [the] defendant's conduct was deceptive but that the deception caused [him] harm."  . . . .The harms cited by the Legislature when it passed the [California Email Law] do not satisfy that burden of proof. Those harms do not stem from the deceptive content of individual spam e-mails, but from the excessive volume of e-mail that spammers collectively send out over the Internet.

*Id.* at 1107-1108.  The court further noted that the Legislative findings adopted in connection with the California Email Law addressed the "problems caused by the *collective* conduct of *many* spammers," not the harm caused by any one spammer.  *Id.* at 1108.  The court concluded that the plaintiff could not "bootstrap legislative findings about the aggregate effects of abusive commercial e-mail practices in general into an argument that [the plaintiff] must have suffered some unspecified damage" from the receipt of emails.  *Id.*

The Court here finds the reasoning of *Balsam* to be persuasive and likewise concludes that Plaintiffs have not alleged any justifiable reliance on the allegedly deceptive emails that resulted in actual damage.  Nor do the California legislature's findings as to the collective harm of abusive commercial emails satisfy the elements of Plaintiffs' misrepresentation claims requiring justifiable reliance on Fluent's alleged misrepresentations that resulted in damage.[6]  Therefore, the Court concludes that both claims are insufficiently pled.[7]

---

[6] To the extent that Plaintiffs attempt to show reliance by offering an alternative theory that it is the spam filter that relies on the misrepresentations and therefore allows the email to reach the recipient (resulting in the large volume of emails that Plaintiffs contend show they were damaged), this tortured theory fails.  A misrepresentation claim "cannot be maintained based on a third party's reliance."  *City and County of San Francisco v. Phillip Morris, Inc.*, 957 F. Supp. 1130, 1142 (N.D. Cal 1997) (rejecting misrepresentation allegations that the defendants induced the public's, not the plaintiffs', reliance).  Nor is there any authority suggesting that a feature of a spam filter that allows emails to reach the recipient can constitute "reliance" for the purposes of Plaintiffs' misrepresentation claims.

[7] Because the Court finds that all of Plaintiffs' claims are subject to dismissal on the basis that they are insufficiently pled under Rule 9(b) and 12(b)(6), the Court need not reach Fluent's alternative argument that Plaintiffs should be ordered to provide a more definite statement under Rule 12(e).

United States District Court
Northern District of California

### F.    Whether the Court Should Grant Leave to Amend

Because Fluent has already filed a responsive pleading, Plaintiffs may amend their complaint only if Fluent consents or the Court grants leave to amend.  *See* Fed. R. Civ. P. 15(a). Under Rule 15(a), "courts should freely give leave when justice so requires."  *Id.*  "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'"  *Sonoma Cty. Ass'n of Retired Emps. V. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alternation in original). "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit," *FlatWorld Interactives LLC v. Apple Inc.*, 12 CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013), only that "requests for leave should be granted with 'extreme liberality.'"  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020).

Here, there is no evidence that Plaintiffs acted with bad faith or dilatory motive even though they have already amended their complaint once.  Nor can the Court definitively conclude on the current record that Plaintiffs will be unable to cure the deficiencies identified above. Therefore, the Court finds that it is in the interest of justice to allow Plaintiffs to amend their complaint to address the shortcomings identified above.  The Court rejects Fluent's assertion that Plaintiffs must attach all 1,300 emails to their amended complaint to satisfy Rule 9(b).  They must, however, provide sufficient detail to satisfy the heightened pleading requirement as to all of the emails at issue, either by attaching to their amended complaint examples and pleading in detail that those examples are representative of the remaining emails, or by  providing a detailed appendix describing the emails, including when they were sent and the specific aspects of the emails that are alleged to be unlawful.

## IV.    CONCLUSION

For the reasons discussed above, Fluent's motion to dismiss is GRANTED.  The Court dismisses all of Plaintiffs' claims with leave to amend consistent with the reasons set forth above. Plaintiffs shall file their second amended complaint no later than **December 21, 2020.**

**IT IS SO ORDERED.**

Dated:  November 20, 2020

_____

JOSEPH C. SPERO
Chief Magistrate Judge